**MESCALERO APACHE TRIBE, on its own behalf and on behalf of the Individual Members of the Mescalero Apache Tribe, and Lewis LaPaz, Plaintiffs,**

v.

**Everett RHOADES, Director Indian Health Services, Josephine T. Waconda, Area Director of Albuquerque Indian Health Services, Department of Health and Human Services, and The United States of America, Defendants.**

Civ. No. 89–0401 JP.

United States District Court,
D. New Mexico.

Dec. 7, 1990.

George E. Fettinger, Fettinger & Bloom, Alamogordo, N.M., for plaintiffs.

Marilyn S. Page, U.S. Attorney's Office, Albuquerque, N.M., for defendants.

## MEMORANDUM OPINION AND ORDER

PARKER, District Judge.

The subject of this memorandum opinion and order is "Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment" filed June 5, 1989. After reviewing the memoranda submitted by the parties in conjunction with the motion, and after consulting the applicable authorities, I conclude that defendants' motion should be denied.

### I. *Background*

Plaintiff Lewis LaPaz ("LaPaz") is a member of the Mescalero Apache Tribe ("Tribe") and a resident of its reservation located in Otero County, New Mexico. For the last thirty years LaPaz has served in continuous employment with the U.S. government, since 1967 holding employment with the Indian Health Service ("IHS") as a motor vehicle operator.

The dispute in this case arose out of LaPaz's entry into tribal politics and government, creating an alleged conflict of interest with his federal employment. In 1984, LaPaz successfully sought election to the Mescalero Tribal Council, a position he continues to hold. However, when in the beginning of 1987 the Director of IHS, defendant Everett Rhoades ("Rhoades"), learned of LaPaz's position on the Tribal Council, he directed LaPaz to comply with Department of Health and Human Services's Standards of Conduct and submit a request for approval to engage in "outside activity" as required by 45 C.F.R. § 73.735–708(a)(4). LaPaz submitted the request, and on June 1, 1987 Rhoades denied it, finding the activity incompatible with Department Standards of Conduct. 45 C.F.R. § 73.735–701(a) & (b).

Consequently, the Director of the Albuquerque Area IHS, defendant Josephine T. Waconda ("Waconda"), instructed LaPaz, by memorandum of March 21, 1988, either to resign from the Tribal Council or to submit his resignation from federal employment. By return letter of March 28, 1988, LaPaz rejected either alternative and questioned the Department's finding of conflict of interest under § 73.735–701(a) or (b). Furthermore, LaPaz pointed to § 73.735–904(f), which states that termination should only be permitted when it is clear that no other remedy can be found that would be acceptable to both the Department and the employee and, in any

event, should be employed only in the most extreme cases.

After reviewing LaPaz's request for approval and letter dated March 28, 1988, Waconda submitted on May 4, 1988 a memorandum to Rhoades requesting reevaluation of his original decision and recommending approval of LaPaz's outside activity. On October 25, 1988, Waconda wrote to LaPaz informing him that Rhoades had reevaluated LaPaz's request and had reaffirmed his decision to deny it. As grounds for the denial, Waconda's memorandum cited 18 U.S.C. §§ 203 and 205, which make it a crime for a federal employee to serve as an agent for someone before the federal government. The memorandum stated that the steadily increasing contracting activities between IHS and tribal organizations, among other things, make it likely that an individual serving on the tribal council will represent the tribe before the government, in contravention of the above sections. Accordingly, Waconda ordered LaPaz either to resign his council seat or to tender his resignation within fifteen calendar days.

LaPaz filed a grievance under the Department's grievance system, pursuant to U.S. Office of Personnel Management regulations. 5 C.F.R. Part 771(C). In a "Stage 1" grievance petition filed with Rhoades and Waconda on November 8, 1988, LaPaz made the following arguments: (1) no conflict of interest exists; (2) the IHS order is contrary to the Indian Preference Act; (3) the IHS order is an infringement of the constitutional rights of LaPaz and of the sovereign powers of the Tribe; and, (4) LaPaz was denied advice, assistance, and consultation on his rights. By letter dated December 12, 1988, Waconda found no merit to LaPaz's contentions and stated that LaPaz would be considered insubordinate if he continued to disobey her order of October 25, 1988.

On December 20, 1988, LaPaz filed a "Stage 2" grievance petition with Rhoades and Waconda, in which, in addition to restating his original four contentions, he presented his reasons for disagreeing with Stage 1 denial. Again, LaPaz's arguments were found to have no merit when Rhoades denied the Stage 2 grievance petition on February 1, 1989.

Claiming that the February 1, 1989 denial constituted a final agency action, LaPaz, joined by the Tribe, seeks review in this Court. Plaintiffs rely on the following statutes in alleging jurisdiction: (1) 28 U.S.C. §§ 1346, 2671–80, commonly known as the Federal Tort Claims Act; (2) 25 U.S.C. §§ 461 *et seq.*, commonly known as the Indian Reorganization Act and Indian Preference Act; (3) 25 U.S.C. § 450 *et seq.*, commonly known as the Indian Self–Determination and Education Assistance Act; (4) 5 U.S.C. §§ 701–06, commonly known as the Administrative Procedure Act; and (5) 28 U.S.C. Section 1362, providing for district court jurisdiction over civil claims brought by an Indian Tribe wherein the matter arises under the Constitution, laws, or treaties of the United States.

## II. *Jurisdiction over LaPaz's Claims*

No one contests LaPaz's standing in this case. The question that I must address is whether I have jurisdiction to hear his claims. This issue turns on which of two competing bodies of law governs in this instance: on the one hand, the Civil Service Reform Act of 1978 (CSRA), Pub.L. 95–454, 92 Stat. 1111 *et seq.* (codified in scattered sections throughout Title 5 of the United States Code), denies review to district courts, with specified exceptions;[1] on the other hand, Indian law, in particular the Indian Preference Act, allows for district court review in accordance with the Administrative Procedure Act.

### A. Civil Service Reform Act

In examining the legislative history of the CSRA, the U.S. Supreme Court has readily discerned the general intent of Congress in passing the Act. In *United States v. Fausto*, 484 U.S. 439, 444, 108 S.Ct. 668,

---

1. 5 U.S.C. § 7703(b)(2) allows employees complaining of discriminatory action in violation of Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act, or the Fair Labor Standards Act of 1938 to file in federal district court after exhausting administrative remedies.

671, 98 L.Ed.2d 830 (1988), the Court recognized "[a] leading purpose of the CSRA was to replace the haphazard arrangements for administrative and judicial review of personnel action, part of the 'outdated patchwork of statutes and rules built up over almost a century' that was the civil service system, S.Rep. No. 95–969, p. 3 (1978)." In its place, the CSRA would operate as an integrated and comprehensive management system, with a detailed scheme of administrative and judicial review. *Id.* at 445, 108 S.Ct. at 671; *Lindahl v. Office of Personnel Management*, 470 U.S. 768, 773, 105 S.Ct. 1620, 1624, 84 L.Ed.2d 674 (1985). Depending on the status of the employee [2] and on the type of personnel action,[3] the Act provides for differing avenues of review. But, other than those exceptions specified in § 7703(b)(2), none of the avenues passes through the district court.

Outside of the Indian law context, many courts have recognized that the CSRA framework is the exclusive means of relief for federal employees seeking review of and redress for a disputed personnel action. *See, e.g., Lindahl*, 470 U.S. at 798–99, 105 S.Ct. at 1637–38; *Harrison v. Bowen*, 815 F.2d 1505, 1516 (D.C.Cir.1987); *Weatherford v. Dole*, 763 F.2d 392 (10th Cir.1985);

*Broadway v. Block*, 694 F.2d 979 (5th Cir. 1982). *But see Dugan v. Ramsay*, 727 F.2d 192, 194–95 (1st Cir.1984). In *Lindahl*, the Supreme Court noted "the Senate Report on the CSRA emphasized that trial-level review of agency action was 'appropriate' only where 'additional fact-finding' was necessary, and that in all other cases direct appellate review would 'merely eliminat[e] an unnecessary layer of judicial review.' S.Rep. No. 95–969, at 52, 63." *Id.*, 470 U.S. at 798, 105 S.Ct. at 1637.

As a federal employee, plaintiff LaPaz's claims would ordinarily fall within the constructs of the CSRA framework. But LaPaz is not just a federal employee, he is also an Indian. Indeed, he is an Indian with a grievance arising from a fundamental Indian statute. Although Congress has given a clear indication of its general intent in enacting the CSRA, it has given no indication that it envisioned the consequent displacement of substantive and thriving Indian law.[4] And it is that law that I find must govern in this case.[5]

## B. The Indian Preference Act

As enacted in 1934, section 12 of the Indian Reorganization Act, which constitutes the Indian Preference Act, states:

---

2. The CSRA divides federal employees into four categories: (1) "competitive service" employees, 5 U.S.C. § 2102; (2) those in the "excepted service," 5 U.S.C. § 2103; (3) probationers, 5 U.S.C. § 2105(a); and "preference eligible" employees, 5 U.S.C. § 2108(3). In general, the Act provides competitive and preference eligible employees with more extensive rights and protections, both substantive and procedural. *See Harrison v. Bowen*, 815 F.2d 1505, 1510 (D.C.Cir.1987).

3. Chapter 23 of the Act contains the standards of the merit system of employment and forbids an agency to engage in specified "prohibited personnel practices," including unlawful discrimination, coercion of political activity, nepotism, and reprisal against whistleblowers. 5 U.S.C. §§ 2301–2302. Chapter 43 governs personnel actions based on unacceptable job performance. Chapter 75 provides for a two-track scheme governing adverse actions taken against employees for the "efficiency of the service:" Subchapter I covers minor adverse actions, §§ 7501–7504; and, Subchapter II governs major adverse actions, §§ 7511–7514. *See Fausto*, 484 U.S. at 445–47, 108 S.Ct. at 672–73.

4. Even the recent amendment of the Indian Self–Determination and Education Assistance Act converting excepted Indian employees to the competitive service shows no intent by Congress to remove already-in-place Indian rights. The last sentence of the amendment states: "The conversion shall not alter the Indian's eligibility for preference in personnel actions." 25 U.S.C. § 450i(m). Moreover, the legislative history of the amendment, if anything, reveals a purpose of broadening Indian protections:
    In order to ease the burden on Indian preference employees who may be displaced as the result of contracting, the Committee amendment allows Indian preference employees who are under excepted service to be reclassified as competitive service personnel. The amendment will allow displaced federal employees to compete government-wide for jobs. 1988 U.S.Code Cong. and Adm.News, p. 2648.

5. This is not to say any employment claim by an Indian should fall outside the CSRA appellate scheme. On the contrary, if no substantive Indian statute is implicated, an Indian employee would receive the same rights and protections as any other employee, all derived from the CSRA statutory framework.

The Secretary of the Interior is directed to establish standards of health, age, character, experience, knowledge, and ability for Indians who may be appointed, without regard to civil service laws, to the various positions maintained, now or hereafter, by the Indian Office, in the administration of functions or services affecting any Indian Tribe. Such qualified Indians shall hereafter have the preference to appointment to vacancies in any such positions.

48 Stat. 986 (1934). At present, the Secretary of the Department of Health and Human Services holds the responsibility for enforcing the Indian Preference Act with regard to the providing of health services to Indians. Pub.L. No. 83–568, 68 Stat. 674 (1954); 42 U.S.C. § 2001 (1976 & Supp. V 1981) (both cited in *Preston v. Heckler*, 734 F.2d 1359, n. 10 (9th Cir.1984)). Consequently, Indian employees, like LaPaz, who work in the Indian Health Service can rightfully demand all those protections afforded by the Act.

The purpose of Indian preference statutes has been to give Indians greater participation in their own self-government. *See Morton v. Mancari*, 417 U.S. 535, 541, 94 S.Ct. 2474, 2478, 41 L.Ed.2d 290 (1974). As the Court in *Preston* reasoned: "Given that the purpose of the Indian Preference Act is to allow Indians to control programs that serve Indians, the preference logically would apply to a variety of employment decisions besides the type of hiring involved here." 734 F.2d 1359, n. 15. The Court in *Freeman v. Morton*, 499 F.2d 494, 497–99 (D.C.Cir.1974), held that, in addition to initial hiring, the Act applies to promotions, training, and lateral transfers. Faced with a fact pattern similar to that presently before me, the court in *Oglala*

*Sioux Tribe of Indians v. Andrus*, 603 F.2d 707, 714 (8th Cir.1979), ruled that the Bureau of Indian Affairs' reliance on general conflict of interest regulations in order to "remove" an employee whose brother had been elected tribe president violated the Indian Preference Act.

■ While at this stage in the proceedings I would be premature in determining whether defendants have violated the Indian Preference Act, I can and do conclude that the Act is implicated by the government's actions in this case. A long accepted principle of Indian law is that statutes dealing with Indians must be construed liberally in favor of the Indians. *Choate v. Trapp*, 224 U.S. 665, 32 S.Ct. 565, 56 L.Ed. 941 (1912). The ordering of plaintiff either to resign his council seat or to tender his resignation does raise the issue of the Act's violation. The remaining question is whether I have jurisdiction to examine this issue.

The Administrate Procedure Act (APA) allows for judicial review of a final agency action.[6] 5 U.S.C. §§ 701–06. Defendants, however, argue that CSRA forecloses review under the APA by a district court. Although generally correct, this argument misses the mark in the instant case. The courts have not allowed agencies to apply general civil service regulations to exclude Indians where the agency action conflicts with congressional intent to promote Indian employment in Indian services.[7] *See Preston*, 734 F.2d at 1370–71; *Oglala Sioux*, 603 F.2d at 716. The Eighth Circuit in *Oglala Sioux* found that the use of civil service regulations to impose conflict of interest disqualifications upon Indians "is precisely the kind of blind transference of general Civil Service principles to the par-

6. In the memorandum in support of their motion, defendants state: "The grievance process has now been completed and relief was denied." Memorandum in Support of Motion to Dismiss or, in the Alternative, for Summary Judgment, p. 2, para. 5, filed June 5, 1989.

7. Both the 1976 and 1982 versions of the United States Code omitted as obsolete the phrase "without regard to civil-service laws" from the Act, *see* 25 U.S.C. § 472 (1982). That provision was thought by the Office of the Law Revision Counsel to have been repealed by implication by

the "Ramspeck Act," 54 Stat. 1211 (1940). In general, a specific statutory provision, such as the Indian Preference Act would not ordinarily be repealed by a generally applicable statute enacted at a later date. *Preston v. Heckler*, 734 F.2d 1359, 1368 (9th Cir.1984). *See Morton v. Mancari*, 417 U.S. 535, 550–51, 94 S.Ct. 2474, 2482–83, 41 L.Ed.2d 290 (1974). In *Preston*, the court concluded that the omission of the phrase was improper and that the Indian Preference Act still applied "without regard to civil service laws." 734 F.2d at 1369.

ticular context of Indian employment which § 12 explicitly forbids." *Id.*

Application of a general service act to restrict Indian access to the district court for redress of a violation of the Indian Preference Act would also conflict with congressional intent to protect Indian rights and to provide broad review of agency action under the APA. *See Morton v. Mancari,* 417 U.S. 535, 94 S.Ct. 2474, 41 L.Ed.2d 290 (1974); *Bowen v. Massachusetts,* 487 U.S. 879, 901–08, 108 S.Ct. 2722, 2736–39, 101 L.Ed.2d 749 (1988). In *Bowen* the Court concluded that section 704[8] of the APA allowed review in the district court "because the doubtful and limited relief available in the Claims Court is not an adequate substitute for review in the District Court." *Id.* at 901, 108 S.Ct. at 2736. The Court stressed the importance of district court review of agency action. *Id.* at 908 & n. 46, 108 S.Ct. at 2739 & n. 46. Nonetheless, district court review is not essential if LaPaz can obtain adequate judicial review by another means. The CSRA framework may provide for ultimate review by the Court of Appeals for the Federal Circuit,[9] access to which would probably satisfy my concern in this regard. But the CSRA makes no guarantee that LaPaz would receive such access. For the following two reasons, I find that the relief under the CSRA is a doubtful, and therefore an inadequate, substitute for review in this court. Both grounds center on the uncer-

tainty of the availability to LaPaz of review by the Merit Systems Protection Board (MSPB), without which LaPaz is barred from review by the Court of Appeals for the Federal Circuit. My first reason is the uncertain state of LaPaz's employment status. LaPaz was originally appointed to an excepted position with IHS. Defendants contend that his status has changed because he was converted[10] to the competitive service soon after the enactment of 25 U.S.C. § 450i(m).[11] However, neither the language of the provision nor the legislative history[12] gives a clear indication that the amendment was to be applied retroactively, as the Department has attempted to do here. Furthermore, given the instant controversy, there is some doubt whether LaPaz has met the conversion requirement of "satisfactory performance." After all, Waconda informed LaPaz on December 12, 1988: "if you continue to disobey the direct order [of October 25, 1988], to cease participation as a member of the Tribal Council while maintaining your status as an IHS employee, you will be considered insubordinate." Letter from Josephine T. Waconda, Director, Albuquerque Area Indian Health Service, to Lewis LaPaz, p. 2, December 12, 1988.

The uncertainty of LaPaz's employment status casts doubt on his ability to obtain adequate review. As a competitive employee, LaPaz would have available the full

---

8. Section 704 states, in part: "Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." 5 U.S.C. § 704.

9. Unlike the Claims Court, which is an Article I court, the Court of Appeals for the Federal Circuit is an Article III court of the United States with the authority to exercise broad equitable relief. *See United States v. Amdahl, Corp.,* 786 F.2d 387 (Fed.Cir.1986); *Chavez v. United States,* 18 Cl.Ct. 540 (1989).

10. *See* Memorandum, "Conversion from Excepted to Competitive Service," from Director, Indian Health Service, Department of Health and Human Services, to Assistant Secretary for Personnel Administration, Department of Health and Human Services, March 9, 1989 (approved March 13, 1989); Notification of Personnel Action, Department of Health and Human Services, August 6, 1990 (converting Lewis LaPaz to "a

career competitive appointment after three years of continuous service and satisfactory performance").

11. 25 U.S.C. § 450i(m), as added to the Indian Self–Determination and Education Assistance Act, states:

(m) Conversion to career appointment
   The status of an Indian appointed to the Federal service under an excepted appointment under the authority of section 472 of this title or any other provision of law granting a preference to Indians in personnel actions, shall be converted to a career appointment in the competitive service after three years of continuous service and satisfactory performance. The conversion shall not alter the Indian's eligibility for preference in personnel actions.
Pub.L. 93–638, § 104(m), as added Pub.L. 100–472, § 203(f).

12. *See* footnote 4, *supra.*

extent of review under the CSRA: first, to the MSPB, 5 U.S.C. § 7701, and then to the Court of Appeals for the Federal Circuit, § 7703. Alternatively, as an excepted employee, LaPaz's only recourse would be to submit allegations concerning "prohibited personnel practices" to the Office of Special Counsel for investigation, with no right of further review. § 4303(e); § 1212. *See Harrison v. Bowen*, 815 F.2d 1505, 1511 (D.C.Cir.1987); *Ryon v. O'Neill*, 894 F.2d 199, 202–03 (6th Cir.1990). Without an exact determination of LaPaz's status, it is unclear whether the CSRA allows adequate review in this case.

■ Second, even if LaPaz were a member of the competitive service, the MSPB may lack jurisdiction to hear his claim. The MSPB's jurisdiction is limited to subjects provided for by statute or regulation. *Cowan v. U.S.*, 710 F.2d 803, 805 (Fed.Cir. 1983); *Ad Hoc Committee for Integrity in Dept. of Energy v. Hodel*, 594 F.Supp. 569, 571 (D.D.C.1984). Under the CSRA, only some employment actions may be appealed to the MSPB, even if the aggrieved party is a competitive service employee. Employees have a right of direct appeal to the MSPB only where relatively serious sanctions are invoked. In accordance with Chapter 43, a competitive employee "who has been reduced in grade or removed under this section is entitled to appeal the action to the Merit Systems Protection Board under section 7701 of this title." 5 U.S.C. § 4303(e). Likewise, Chapter 75 permits such an appeal where the grievance is a major "adverse action," which includes "removal; suspension for more than 14 days; reduction in grade; reduction in pay; and a furlough of 30 days or less." § 7512(1)–(5). *See Fausto*, 484 U.S. at 445–47, 108 S.Ct. at 672–73; *Ryon v. O'Neill*, 894 F.2d at 203.

The Department of Health and Human Services and the Indian Health Services have given LaPaz the choice of either re-

signing his council seat or tendering his resignation. Does this constitute a removal? Unless the MSPB would certainly deem it so, thereby exercising jurisdiction over the claim, the adequacy of review available to LaPaz is in question. If anything, the choice given to LaPaz would seem *not* to be a removal. Even defendants argue that the action is not a removal: "The actions complained of by plaintiff fall within the ... category—'prohibited personnel practices,' not resulting in 'adverse action.' Accordingly, plaintiffs' exclusive remedy is to request an investigation by the OSC." Memorandum in Support of Motion to Dismiss or, in the Alternative, for Summary Judgment, 9, filed June 5, 1989.[13] *See* 5 U.S.C. §§ 2301–02; § 1212.

As long as the MSPB's authority to review LaPaz's claims is in doubt, I should not dismiss this case. LaPaz bases his claim on substantive Indian law for which there appears no other adequate judicial remedy. Consequently, I find that LaPaz has timely applied for judicial review of a final agency action pursuant to 5 U.S.C. §§ 701–06.[14]

### III. *Standing of the Tribe*

■ The standing requirement is a component of the "actual claim or controversy" mandate of Article III. The Supreme Court has delineated the test for standing under Article III:

> at an irreducible minimum, Art. III requires the party who invokes the court's authority to "show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant," ... and that the injury "fairly can be traced to the challenged action" and "is likely to be redressed by a favorable decision."

*Valley Forge Christian College v. Americans United for Separation of Church &*

---

**13.** I should note that in subsequent correspondence, defendants indicate that "[a] coerced resignation may be an adverse action...." Letter of July 17, 1990, para. 5 (citing *Dumas v. Merit Systems Protection Bd.*, 789 F.2d 892, 894 (Fed. Cir.1986). This statement further illustrates the uncertainty of the Board's jurisdiction over this claim.

**14.** Plaintiffs have met the requirements for judicial review under the APA and, as a result, I need not decide whether they would also have an implied private right of action under the Indian Preference Act.

*State, Inc.*, 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982) (citations omitted; footnotes omitted) (quoted in *Preston,* 734 F.2d at 1364). The policy concern behind standing is that each party have "such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of the issue upon which the court so largely depends." *Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962). In this case, it is evident that the Tribe's stake in this dispute is sufficient to warrant invocation of federal court jurisdiction and to justify exercise of this court's remedial powers on the Tribe's behalf. *See Warth v. Seldin,* 422 U.S. 490, 498–99, 95 S.Ct. 2197, 2204–05, 45 L.Ed.2d 343 (1975).

The Tribe is not merely asserting the rights of one of its members, LaPaz. The Tribe's stake in the outcome of this controversy is twofold. First, the Tribe has a distinct and palpable interest in assuring that the United States does not exceed its statutory and regulatory authority in applying regulations to Tribal members on the Reservation. Second, the Tribe has a distinct and palpable interest in protecting the Tribe's power of self-government from infringement.

The Tribe claims that the application of general civil service regulations to a member of the Tribe violates the Indian Reorganization Act (Indian Preference Act), 25 U.S.C. § 472, and the Indian Self Determination and Education Assistance Act, 25 U.S.C. § 450 *et seq.*[15] Accordingly, the Tribe would have standing under either the Administrative Procedure Act, 5 U.S.C. §§ 701–06, or 28 U.S.C. § 1362. *See Oglala Sioux,* 603 F.2d at 712–13; *Preston,* 734 F.2d at 1363–65.

In *Oglala Sioux,* the Oglala Sioux Tribe brought suit against the federal government for agency action alleged to violate the Indian Preference Act. Applying general conflict-of-interest regulations, the Bureau of Indian Affairs had ordered the transfer of a member of the Tribe from his position as Agency Superintendent to a position off the reservation in the wake of his brother's election to the Tribal Presidency. In denying the government's motion to dismiss, the district court set forth the Tribe's interest as follows, in language approved and relied upon by the appellate court:

> The Tribe has a strong interest in the position of BIA Superintendent on the Pine Ridge Indian Reservation. The Tribe has an interest in being assured that any relocation of a superintendent whom they recommend for the position and continue to support * * * not be arbitrary, capricious or the result of an abuse of discretion.

> The Tribe also has a significant interest in self-determination. The election of Elijah Whirlwind Horse as president of the Oglala Sioux Tribe resulted in the BIA's decision to relocate Superintendent Anthony Whirlwind Horse because of alleged violations of 43 C.F.R. § 20.735–32(d). Thus the Tribe's expression of [its] power to elect the candidate of [its] choice * * * caused the BIA to decide to relocate Anthony Whirlwind Horse. This result, which was highly undesirable from the Tribe's point-of-view, was thus an infringement of the Tribe's power of self-government.

*Oglala Sioux,* 603 F.2d at 713.

The Mescalero Apache Tribe would appear to have as great an interest in the outcome of this litigation as the Oglala Sioux Tribe did in its case. The Mescalero Apache Tribe has a clear stake in the manner in which civil service conflict-of-interest laws are applied to its members. Indeed it appears that the impact of such regulations poses a greater threat to the Tribe than did the regulations in *Oglala Sioux.* In that case, a high-level and "sensitive"[16] position

---

**15.** For purposes of ruling on a motion to dismiss for want of standing, the Supreme Court has held that "both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Warth v. Seldin,* 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975) (citing *Jenkins v.*

*McKeithen,* 395 U.S. 411, 421–22, 89 S.Ct. 1843, 1848–49, 23 L.Ed.2d 404 (1969)).

**16.** Defendants argue that because LaPaz holds a lower level job, the reasoning in *Oglala Sioux* is not persuasive. In Defendants' Reply, they assert:

was in question. Although impermissible, the BIA's use of conflict-of-interest regulations to justify transferring Superintendent Whirlwind would seem somewhat more defensible than those at issue here. LaPaz works as a motor vehicle operator. The number of employees who serve in a similar job level, of the non-sensitive variety, suggests that a large number of Indian employees would be susceptible to current conflict-of-interest regulations simply by virtue of their status as federal employees.

Likewise, the Tribe's interest in self-determination is placed in jeopardy to no less a degree than was the Oglala Sioux Tribe's. In fact, the infringement on the Mescalero Apache Tribe is arguably more severe. In *Oglala Sioux* the government applied no pressure on an elected official to resign; the Oglala Sioux Tribe was only indirectly penalized for the expression of its electoral will. Here, however, the government in no way disguises the pressure it has brought to bear on LaPaz: if he wants to keep his job, he must resign his seat on the Tribal Council. Furthermore, the regulations in this case, as applied, have the potential of excluding many Indians, who are federal employees, from participating more fully in tribal self-government.

Plaintiffs allege that the government's application of general civil service law in this case constitutes a failure to comply with the Indian Preference Act in violation of the Administrative Procedure Act.[17] *See Preston*, 734 F.2d at 1364. The Tribe has no administrative remedies available to it and the agency action is final as to the

Tribe's interests. *See Oglala Sioux*, 603 F.2d at 713 & 721. Thus, I find that the Tribe has standing in this court under the APA, 5 U.S.C. § 702 (1982).[18] The plaintiffs have alleged "that the challenged action has caused [the Tribe] injury in fact, economic or otherwise;" in addition, "the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute ... in question;" and finally, the injury is "redressable by the court." *Association of Data Processing Service Organizations, Inc. v. Camp*, 397 U.S. 150, 152–53, 90 S.Ct. 827, 829–30, 25 L.Ed.2d 184 (1970); *Preston*, 734 F.2d at 1364.

Furthermore, I find that the Tribe has standing under 28 U.S.C. § 1362. That section allows for a civil action by an Indian tribe with a governing body duly recognized by the Secretary of the Interior wherein the matter arises under the Constitution, laws, or treaties of the United States. The Tribe has been recognized as an "Indian tribe" for purposes of suit under § 1362. *Mescalero Apache Tribe v. Burgett Floral Co.*, 503 F.2d 336 (10th Cir.1974). The dispute in the instant case arises under the Indian Preference Act.

IV. *Jurisdiction over the Tribe's Claims*

■ Now that I have decided that the Tribe has standing to assert its claims in this case, the jurisdictional question falls into place fairly easily. This court has jurisdiction over the Tribe's claims under 5

---

In [*Oglala Sioux*] the Tribe had a strong interest in who was placed as Agency Superintendent.... The instant case is clearly distinguishable on the facts. Mr. LaPaz is in a much lower and less sensitive position than an agency superintendent.... Thus, the Tribe has no established rights to protect in this case.

Defendants' Reply to Plaintiffs' Response to Defendants' Motion to Dismiss or for Summary Judgment," 2, filed August 10, 1989.

In responding to this contention, plaintiffs argue:

For the United States to argue that the *Oglala Sioux* case is not applicable because Mr. LaPaz holds a "less sensitive position" than the Tribal member in the *Oglala Sioux* case supports the position of the Mescalero Apache Tribe. One of the primary arguments set

forth in the Complaint is that the nature of Mr. LaPaz's federal employment as a van driver demonstrates that his outside activity on the Tribal Council creates no conflict or appearance of conflict in his fulfillment of his federal obligations to drive a van.

Surreply of Plaintiffs, 4–5, filed August 25, 1989.

17. In their *Complaint*, plaintiffs state: "Defendants' action is arbitrary, capricious, an abuse of discretion, and not in accordance with law, and should be set aside pursuant to 5 U.S.C. Sec. 706(2)(A)." Complaint, 4, para. 17.

18. 5 U.S.C. § 702 states in part: "A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."

U.S.C. §§ 701–06. Section 702 provides, in part:

A person suffering legal wrong of agency, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party.

The Tribe seeks equitable relief from alleged impermissible administrative action. The APA does not provide a general grant of federal jurisdiction. *Califano v. Sanders*, 430 U.S. 99, 105–07, 97 S.Ct. 980, 984–85, 51 L.Ed.2d 192 (1977); *Merrion v. Jicarilla Apache Tribe*, 617 F.2d 537, 540 (10th Cir.1980), *aff'd, Merrion v. Jicarilla Apache Tribe*, 455 U.S. 130, 102 S.Ct. 894, 71 L.Ed.2d 21 (1982). Since only injunctive relief is sought, however, an action can be maintained against the government under § 702. *Merrion* 617 F.2d at 540; *Assiniboine and Sioux Tribes of Ft. Peck Indian Reservation v. Board of Oil and Gas Conservation*, 792 F.2d 782, 792–93 (9th Cir. 1986); *Red Lake Band of Chippewa Indians v. Barlow*, 846 F.2d 474, 476 (8th Cir. 1988). *See Bowen v. Massachusetts*, 487 U.S. at 891–901, 108 S.Ct. at 2731–36, 101 L.Ed.2d 749 (1988).

Additionally, the Tribe may maintain its action under 28 U.S.C. § 1362. Although this statute provides that district courts have original jurisdiction of civil actions brought by an Indian tribe in which the matter in controversy arises under the constitution, laws, or treaties of the U.S., it does not waive sovereign immunity. *Assiniboine*, 792 F.2d at 792; *Standing Rock Sioux Indian Tribe v. Dorgan*, 505 F.2d 1135 (8th Cir.1974). Nonetheless, the defense of sovereign immunity will not bar the Tribe in this case, for § 702 operates to waive the immunity in non-statutory review actions for non-monetary relief. *Assiniboine*, 792 F.2d at 793. *See* F. Cohen, *Handbook of Federal Indian Law*, 225 n.

74 (1980); 4 K. Davis *Administrative Law Treatise* § 23:19 at 195 (2d ed.1983).

Finally, even without § 702's waiver of sovereign immunity, plaintiffs are not barred from seeking equitable relief under § 1362. With respect to money damages against the United States, the defense of sovereign immunity under § 1362 has been held to apply. *Rosebud Sioux Tribe v. United States*, 714 F.Supp. 1546, 1553 (D.S. D.1989); *Scholder v. United States*, 428 F.2d 1123, 1125 (9th Cir.1970), *cert. denied Scholder v. United States*, 400 U.S. 942, 91 S.Ct. 240, 27 L.Ed.2d 246 (1970). Generally, "[i]t is a well-recognized principle that the doctrine of sovereign immunity bars suits against government agencies or officials for monetary damages, but does not bar suits for injunctive or declaratory relief." *American Federation of Government Employees v. Callaway*, 398 F.Supp. 176, 191 (N.D.Ala.1975). In similar fashion, § 1362 specifically will not bar a claim for equitable relief from adverse agency or government action. *Pueblo of Taos v. Andrus*, 475 F.Supp. 359, 364 (D.D.C.1979). *See Charrier v. Bell*, 547 F.Supp. 580, 585 (M.D.La.1982).

## V. Conclusion

I find that Plaintiffs have timely applied for judicial review by this court. They have standing and, the court has jurisdiction.

IT IS THEREFORE ORDERED that defendants' motion to dismiss or, in the alternative, for summary judgment is denied.