**AD HOC COMMITTEE FOR INTEGRITY IN the DEPARTMENT OF ENERGY, et al.; Plaintiffs,**

v.

**Donald P. HODEL, Defendant.**

**Civ. A. No. 84–2838.**

United States District Court, District of Columbia.

Sept. 28, 1984.

7. By this ruling, we express no opinion as to the merits of Krugler's claims.

Susan Silber, Takoma Park, Md., Herman Schwartz, Washington, D.C., for plaintiffs.

Rebecca L. Ross, Asst. U.S. Atty., Washington, D.C., for defendant.

## MEMORANDUM

HAROLD H. GREENE, District Judge.

On September 13, 1984 this Court issued a temporary restraining order restraining the Secretary of Energy from effectuating a reduction in force (RIF) in the Office of Competition and the Office of Consumer Affairs. Plaintiffs are now seeking issuance of a preliminary injunction, and the government has filed a motion to dismiss. After consideration of the memoranda submitted by the parties, the arguments advanced at the hearing, and the entire record in this case, the Court has decided to deny the motion for a preliminary injunction and to grant the motion to dismiss.

### I

On September 12, 1984, plaintiffs—two consumer groups, the Ad Hoc Committee for Integrity in the Department of Energy (an unincorporated association of DOE employees), a Department of Energy employee subject to the RIF, and the National Treasury Employees Union—filed this action for declaratory and injunctive relief. Plaintiffs alleged that the RIF which was scheduled to occur on September 14, 1984 would violate two provisions of the Department of Energy Organization Act, 42 U.S.C. §§ 7112, 7133(a)(7). According to plaintiffs, these sections of the Act mandate certain programs of consumer protection and competition; the RIF would make it impossible for the Department to comply with the congressional mandate; and that as a consequence of the RIF, they would suffer irreparable harm.[1]

As noted, after a hearing on September 13, 1984, the Court issued a temporary restraining order. The parties have now had the opportunity to file additional briefs on the merits of the injunction request. In addition, the government has filed a motion to dismiss on the following grounds: lack of jurisdiction; failure to exhaust administrative remedies; lack of standing; ripeness; no private right of action and failure to state a claim upon which relief can be granted. All these issues have been fully briefed and argued, and the matter is now ripe for decision (see note 13 *infra*).

### II

Foremost among the "jurisdictional" arguments that are advanced by the government is that some of the plaintiffs have failed to exhaust their administrative reme-

---

1. Two different harms were alleged. The consumer groups argued that they would be injured by the disappearance of programs from which they and their constituents presently benefit. The remaining plaintiffs claimed that they would be injured "by the failure of the DOE to abide by the legislative mandate and by the loss of their jobs and support staff." Complaint at p. 6.

dies and that all the plaintiffs lack standing to bring this action.

With respect to plaintiffs West and National Treasury Employees Union, the government contends that the Merit Systems Protection Board (MSPB) is empowered by statute to hear appeals related to reductions in force; that it has the authority to overrule agency decisions which are not "in accordance with law";[2] and that these two plaintiffs therefore could have and should have challenged the RIF through the MSPB system. This argument is not well taken.

The MSPB's jurisdiction is, of course, limited to subjects provided for by statute and regulation. *Cowan v. United States,* 710 F.2d 803, 805 (Fed.Cir.1983). The relevant statute, 5 U.S.C. § 7512, does not include reduction in force actions in its coverage, and the only regulatory provision permitting appeal of RIF actions is contained in 5 C.F.R. § 351.901 (1984). That regulation states that an appeal may be taken by an employee affected by a RIF who believes that Part 351 of the regulations[3] has not been correctly applied. Since plaintiffs claim goes not to any of the matters set forth in Part 351 of the regulation but to underlying questions of legality having no relation to RIF priorities and procedures, it is unlikely that the MSPB would have jurisdiction,[4] and the government's exhaustion argument must fail.

Standing to sue presents more serious problems for the plaintiffs. Standing, of course, subsumes both prudential and constitutional considerations, and the core component of the doctrine derives from the constitutional requirement of case or controversy. The Supreme Court and other tribunals have made it very clear that a plaintiff must allege a personal injury fairly traceable to the defendants' allegedly unlawful conduct which is likely to be redressed by the requested relief.[5] *Allen v. Wright,* ── U.S. ──, ──, 104 S.Ct. 3315, 3325, 82 L.Ed.2d 556 (1984). On the basis of these principles, the government challenges the standing of all the plaintiffs to bring this suit. The Court finds this challenge to be well taken with respect to the "personnel" plaintiffs[6] but not with respect to the consumer groups.

The Ad Hoc Committee is described in the complaint as an unincorporated association of employees at the Department of Energy. It asserts that it will be "injured by the failure of DOE to abide by the legislative mandate and by the loss of [its] jobs and support staff." This allegation is clearly insufficient to establish standing. Just this term, the Supreme Court reiterated that "an asserted right to have the Government act in accordance with law is not sufficient, standing alone, to confer jurisdiction on a federal court." *Allen v. Wright, supra,* ── U.S. at ──, 104 S.Ct. at 3326. DOE's alleged failure to abide by its legislative mandate thus does not provide standing to the Ad Hoc Committee. Since the further allegations of injury to the Ad Hoc Committee through loss of jobs and support staff are unsupported by any evidence on the record, the Committee lacks standing to bring this suit.

**2.** 5 U.S.C. §§ 7512, 7701(c)(2)(C); see also 5 C.F.R. § 1201.56(b)(3).

**3.** Part 351 establishes procedures for reduction in force including procedures for transfers, scope of competition, assignment rights, notice and appeals.

**4.** *Andrade v. Lauer,* 729 F.2d 1475 (D.C.Cir. 1984), principally relied on by the government, is not to the contrary because the right to appeal the RIF in that case was established by a collective bargaining agreement, not by the statutory scheme itself. That being so, there were administrative procedures to exhaust.

**5.** This constitutionally impelled minimum is complemented by several self-imposed prudential limitations on the exercise of federal jurisdiction which include: (1) a prohibition on litigant's raising another person's rights; (2) the rule barring adjudication of generalized grievances more appropriately addressed in representative branches; and (3) the requirement that plaintiff's complaint fall within the zone of interests protected by the law invoked. *Allen v. Wright, supra,* ── U.S. at ──, 104 S.Ct. at 3324.

**6.** The National Treasury Employees Union, the Ad Hoc Committee for Integrity at the Department of Energy, and the individual plaintiff.

With respect to the individual plaintiff and the union the standing issue is less clear. A number of decisions have found that government employees and unions have standing to challenge the legality of government actions that would lead to the termination of government employment. In several of these cases, the allegations involved illegality related to Civil Service laws or challenges to the authority to carry out the particular action under these laws. See, *e.g., Local 2677, AFGE v. Phillips,* 358 F.Supp. 60 (D.D.C.1973); *Local 1858, AFGE v. Paine,* 436 F.2d 882 (D.C.Cir. 1970); *AFGE Lodge 1858 v. Webb,* 580 F.2d 496 (D.C.Cir.1978); *Andrade v. Lauer,* 729 F.2d 1475 (D.C.Cir.1984). The present case is somewhat different because plaintiffs are relying not upon the specific congressional enactment of a program but rather upon the more general legislation establishing DOE. For that reason, it may be that these plaintiffs have not established that they fall within the zone of interest established by the statute although, were the merits of this case more compelling or the legislative language more specific in establishing a program, the employee and the union could perhaps make the requisite showing. It is not necessary to reach a definitive conclusion in that regard, since the consumer groups do have standing.

■ The consumer groups allege that the DOE Organization Act mandates certain programs in the area of consumer affairs and competition; that they are direct beneficiaries of these programs; that these programs are being illegally terminated through the present RIF; and that issuance of an injunction preventing the RIF would ensure them the continued benefit of these programs. These allegations are sufficiently credible to give standing to sue to these plaintiffs and to allow the Court to reach the merits.[7]

### III

■ Substantively at issue in this case is the question whether the Department's decision to reduce the number of employees in the Office of Consumer Affairs and the Office of Competition is contrary to the DOE Organization Act. Plaintiffs concede that there is no language in the Act which explicitly requires the Department to maintain these offices at a particular staffing level;[8] they argue instead that the severely reduced staffing of these offices would violate the spirit of the Act and the legislative intent behind it. According to plaintiffs, Congress intended the functions of consumer protection and advancement of competition to be carried out wholeheartedly and with effectiveness, and that this congressional mandate requires more than token staffing levels. The government replies that the Act gives the Secretary of Energy full discretion with respect to the level of performance of the consumer and competition functions, provided only that each function is assigned to an Assistant Secretary.

This Court has conducted an extensive review of the legislative history, and it concludes that, although Congress did place an affirmative duty upon DOE to perform these functions (as opposed to merely assigning them to an Assistant Secretary), it also left the Department with

---

**7.** The government's argument that the injury to plaintiffs is a speculative one is based upon factual issues related more to the ultimate merits than to the question of standing.

**8.** Section 7112 of title 42 U.S.C. provides that the purposes of the Act are as follows:

(9) to promote the interests of consumers through the provision of an adequate and reliable supply of energy at the lowest reasonable cost;

(12) to foster and assure competition among parties engaged in the supply of energy and fues;

(15) to provide for, encourage, and assist public participation in the development and enforcement of national energy programs.

Section 7133(a)(7) provides that one of the functions of DOE is:

Competition and consumer affairs, including responsibilities for the promotion of competition in the energy industry and for the protection of the consuming public in the energy policymaking processes, and assisting the Secretary in the formulation and analysis of policies, rules, and regulations relating to competition and consumer affairs.

flexibility as to how these functions were to be performed. Specifically, the Act does not set staffing levels, require the creation of "offices," establish specific mandatory programs, or otherwise dictate to the Department the exact parameters of each function.

Plaintiffs rely heavily upon an amendment proposed by Senator Kennedy which would have established an Assistant Secretary of Competition and Consumer Affairs, and which would have explicitly detailed the duties of that individual.[9] But the Kennedy amendment was not acted upon by the Congress, and the Senate version of the bill was reported out of committee without detailing the specific duties of the assistant secretaries. The Senate Report states:

> The section does not statutorily name any of the Assistant Secretaries in keeping with the decision of the committee to allow the Secretary maximum flexibility in organizing the responsibilities of the Assistant Secretary level. Rather, it sets out the functions to be performed by Assistant Secretaries, leaving to the Secretary the decisions as to which should be performed by a single Assistant Secretary, or combined under an Assistant Secretary, or undertaken by more than one Assistant Secretary.

S.Rep. 95–164 at 21, U.S.Code Cong. & Admin.News 1977, pp. 854, 874.

To be sure, Senator Kennedy later expressed his view that the new version essentially tracked his earlier amendment, but this does not detract from the clear statement in the Senate Report that the Secretary was to have substantial flexibility in carrying out the assigned functions.

Moreover, while the original Senate version of the bill would have placed considerable responsibility on the Assistant Secretary with oversight for competition and consumer affairs, requiring him not only to assist the Secretary in the formulation and review of relevant policies, but also "to acquire, analyze and disseminate information relating to competition and consumer affairs," [10] this information function, too, disappeared from the bill during the House-Senate conference.[11]

In sum, the legislative history indicates that Congress intended competition and consumer affairs to be significant concerns of the Department of Energy assigned to a high level official for oversight. The Court regards as entirely without merit the government's claim that this congressional mandate would be met by merely assigning the function to an Assistant Secretary without any staff support or actual implementation. In fact, it was the clear intent of Congress that advancement of competition and protection of consumers be ongoing, permanent elements of the Department's energy program, and that the Department organize and maintain programs to carry out these purposes.

But what Congress did not do was to mandate any particular organizational method for doing so. To the contrary; the legislative history indicates a congressional desire to give the Department flexibility in carrying out its required functions. Affidavits have been presented to this Court from DOE officials to the effect that they fully intend to carry out required functions, using different management techniques than heretofore, including the coordination of cross-departmental use of personnel, contracting-out studies, and use of computers. The affidavits clearly claim a commitment to perform these functions, albeit in a different mode than in the past.

While it appears to the Court that it is unlikely that the new "coordinating" mode

---

**9.** Amendment No. 186 to S.826, April 7, 1977.

**10.** S.Rep. 95–164 at 23, U.S.Code Cong. & Admin.News 1977, p. 876.

**11.** Progress on the House side provides little guidance on this matter. The House version, H.R. 6801, did designate an Assistant Secretary for Competition "who will develop programs to promote and enhance competition among the developers, producers and distributors of oil, gas, and coal and other fuels and energy sources." There never was any comparable provision for consumer affairs in the House bill. The Conference Committee substituted the final language which does not assign responsibilities to a particular Assistant Secretary but does lists as assigned functions competition and consumer affairs.

of dealing with consumer and competition issues will be as effective as the assignment of sufficient personnel to carry out these functions directly, that is a decision which present law leaves to the Department. Under the law, the Department has flexibility, and it accordingly is not for this Court to overrule the Secretary's decision as to how the functions assigned to him should be carried out.

Plaintiffs have indicated congressional dissatisfaction with the Secretary's decision in this regard,[12] and it is obviously within Congress' power to remedy the problem. It is not within this Court's authority, however, to limit the discretion previously granted to the Department of Energy by the Congress because there may now be some dissatisfaction with the way this discretion is being exercised.

The motion to dismiss will accordingly be granted.[13]

---

12. Plaintiffs have submitted for the record copies of correspondence between John Dingell, chairman of the House Subcommittee on Oversight and Investigations of the Committee on Energy and Commerce, and the transcript of a hearing held by that committee. It is clear from these documents that there is a significant level of dissatisfaction in the committee with DOE's present performance of these functions.

13. No purpose would be served by briefing of the jurisdictional and substantive issues beyond that which has already occurred.